**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION**

| | |
|---|---|
| BRIAN TACKETT and KAITLYN OWEN, <br><br> Plaintiffs, <br><br> vs. <br><br> UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al., <br><br> Defendants. | CV-21-37-M-BMM <br><br><br> **ORDER** |

**INTRODUCTION**

Plaintiffs Brian Tackett and Kaitlyn Owen (collectively "Plaintiffs") seek damages and declaratory relief related to Robbie Tackett's ("Mrs. Tackett") death on July 31, 2019. (Doc. 109 at 5, 33.) Plaintiffs bring medical malpractice and loss of consortium claims under state law against Defendants Logan Health, Dr. William T. Highfill ("Dr. Highfill"), Desiree Allen, FNP ("Nurse Allen"), Cabinet Peaks Medical Center ("Cabinet Peaks"), Dr. Jay Maloney ("Dr. Maloney"), Dr. Mark Harding ("Dr. Harding"), Providence Sacred Heart Medical Center ("Providence"),

1

and Dr. Kavitha Chaganur ("Dr. Chaganur"). Plaintiffs allege that the above defendants and Adam Meier, Director of the Montana Department of Health and Human Services ("DPHHS"), violated Plaintiffs' rights under the Fifth and Fourteenth Amendments. (*Id.* at 16-24.) Plaintiffs also allege that Defendants Logan Health, Dr. Highfill, and Nurse Allen violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"). (*Id.* at 27.) Plaintiffs seek a declaration that DPHHS's classification of heart implants as prosthetic devices violates various Medicaid statutes and the Equal Protection Clause. (*Id.* at 33.) Plaintiffs also seek a declaration that Montana Code Annotated § 25-9-411, which limits non-economic damage awards, violates the Montana Constitution and U.S. Constitution.

Defendants filed separate Motions to Dismiss for failure to state a claim upon which relief can be granted, lack of subject matter jurisdiction, and lack of personal jurisdiction. (Docs. 51, 65, 89 & 106.) For the reasons stated below, the Court grants Defendants' motions and dismisses Plaintiffs' Fifth Amended Complaint.

## BACKGROUND

Dr. Maloney admitted Mrs. Tackett to Cabinet Peaks in Libby, Montana with shortness of breath and swelling on February 23, 2018. (Doc. 109 at 6.) Dr. Maloney diagnosed Mrs. Tackett with heart failure after performing various tests. (*Id.*) The hospital released Mrs. Tackett the next day and told her to await a call from a cardiologist. (*Id.*)

2

Mrs. Tackett returned to Cabinet Peaks on March 3, 2018, again with shortness of breath. (*Id.* at 7.) Dr. Harding treated Mrs. Tackett for heart failure. (*Id.*) Dr. Highfill, a heart and lung specialist employed by Logan Health, consulted with Mrs. Tackett and discharged her with medication. (*Id.*) Plaintiffs allege that Defendants failed to perform any stress tests or other tests necessary to detect a heart arrythmia during these visits.

Dr. Highfill provided medical care for Mrs. Tackett at Cabinet Peaks again on March 6, 2018, and March 20, 2018. (*Id.* at 10-11.) Dr. Highfill treated Mrs. Tackett with medication to improve Mrs. Tackett's left ventricle function and recommended that Mrs. Tackett receive a pacemaker if her heart function did not improve. (*Id.*) Dr. Highfill referred Mrs. Tackett to Nurse Allen, a family nurse practitioner, for medication adjustments and a follow-up echocardiogram. (*Id.* at 11.) Plaintiffs allege that Dr. Highfill was negligent in failing to explore Mrs. Tackett's family medical history.

Nurse Allen adjusted Mrs. Tackett's medications over the course of two visits in April of 2018. (*Id.* at 12.) Plaintiffs claim that, during those visits and all future visits, Nurse Allen misrepresented herself as a doctor and placed Mrs. Tackett on an improper medication regimen without the supervision of a doctor. (*Id.* at 11-16.)

Mrs. Tackett returned to Cabinet Peaks again on October 31, 2018, experiencing shortness of breath. (*Id.* at 8.) Cabinet Peaks transferred Mrs. Tackett

by ambulance to Providence in Spokane, Washington, where she was treated by Dr. Chaganur. (*Id.* at 8.) Dr. Chaganur treated Mrs. Tackett until November 4, 2018. (*Id.*) The Court lacks knowledge of the treatment that Providence and Dr. Chaganur provided. Plaintiffs allege that Providence and Dr. Chaganur failed to research Mrs. Tackett's medical history, and, therefore, failed to act upon Dr. Highfill's notes that a pacemaker would be recommended following unsuccessful drug treatment. (*Id.* at 9.)

Nurse Allen resumed providing care for Mrs. Tackett at Cabinet Peaks following her release from Providence. (*Id.* at 12.) Nurse Allen adjusted Mrs. Tackett's medicine over the course of several visits and scheduled an echocardiogram in January of 2018. (*Id.* at 12-13.) Mrs. Tackett received an echocardiogram on January 30, 2019 at Cabinet Peaks. (*Id.* at 13.) Nurse Allen continued to treat Mrs. Tackett and adjust her medications through June 7, 2019. (*Id.* at 13-14.) Mrs. Tackett died of a cardiac arrest on July 31, 2019. (*Id.* at 5, 14.)

Mrs. Tackett received health insurance through Medicaid Montana. (*Id.* at 17.) The federal government and state governments jointly fund Medicaid. 42 U.S.C. § 1396. Medicaid provides health insurance to people based on income. *Id.* States remain responsible for establishing eligibility standards, determining what services to offer, setting payment rates, and administering programs. *See* 42 U.S.C. § 1396a.

4

Medicaid Montana classifies pacemakers as prosthetic devices. This classification means that a doctor has to consider a pacemaker to be medically necessary before Montana Medicaid covers the full cost. Mont. Admin. R. 37.86.1802(2). Plaintiffs claim that Montana Medicaid's classification had the effect of denying Mrs. Tackett a pacemaker because she could not afford the co-pay. (*Id.*) Plaintiffs allege that private health insurance generally covers the entire cost of pacemakers. (*Id.* at 22.) Plaintiffs allege that a pacemaker would have prevented Mrs. Tackett's death. (*Id.* at 23.)

Plaintiffs allege that DPHHS's decision in operating Medicaid Montana not to cover the entire cost of a pacemaker violates various federal Medicaid statutes and the Fifth and Fourteenth Amendments. (*Id.* at 23.) Plaintiffs claim that Defendant medical providers discriminated against Mrs. Tackett because of Medicaid's incomplete coverage for heart implants. Plaintiffs further allege that the Logan Health, Nurse Allen, and Dr. Highfill engaged in a scheme of defrauding Medicaid in violation of RICO. (*Id.* at 27.) Plaintiffs allege that Highfill, Allen, and Logan Health billed Medicaid for inadequate medical services provided to Mrs. Tackett. (*Id.*)

## LEGAL STANDARD

*Rule 12(b)(6)*

A complaint must include "a short and plain statement of the claim showing that the plaintiff is entitled to relief." Fed. R. Civ. Pro. 8(a)(2). A claim "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim can be dismissed by motion of the defendant for "failure to state a claim upon which relief may be granted." Fed. R. Civ. Pro. 12(b)(6).

A court must accept as true all factual allegations in a complaint when determining whether a complaint withstands a Rule 12(b)(6) motion to dismiss. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). A court may dismiss a claim pursuant to Rule 12(b)(6) "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). "[A] complaint must also contain sufficient factual matter to state a facially plausible claim of relief" in order to survive a Rule 12(b)(6) motion to dismiss. *Shroyer v. New Cingular Wireless Servs.*, 622 F3d. 1035, 1042 (9th Cir. 2010).

### Rule 12(b)(2)

A court must possess personal jurisdiction over all parties in order for a case to proceed. *See* Fed. R. Civ. Pro. 12(b)(2). "A motion to dismiss under [Rule] 12(b)(2) tests whether a federal court has personal jurisdiction over a defendant." *Mold-A-Rama Inc. v. Collector-Concierge-Int'l*, 451 F.Supp.3d 881, 884 (N.D.

Illinois 2020) (internal quotations omitted). The plaintiff bears the burden of establishing jurisdiction. *Nomad Glob. Commc'n Sols., Inc. v. Hoseline, Inc.*, 2021 WL 1400983, *4 (D. Mont. April 14, 2021). Where no applicable federal statute governs personal jurisdiction, "the district court applies the law of the state in which the district court sits." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

Montana applies "a two-step test to determine whether a Montana court may exercise personal jurisdiction over a nonresident defendant." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Court*, 443 P.3d 407 (Mont. 2019); *see also Bird v. Hiller*, 892 P.2d 931 (Mont. 1995); *Cimmaron Corp. v. Smith*, 67 P.3d 258 (Mont. 2003). A court first must determine "whether personal jurisdiction exists under Montana's long-arm statute." *Ford Motor Co.*, 443 P.3d at 412. If Plaintiffs satisfy the first step, a court must determine whether exercising personal jurisdiction would be constitutional. *Bird*, 892 P.2d at 470; *Ford Motor Co.*, 443 P.3d at 412.

## ANALYSIS

The Court will address Defendants' motions to dismiss in six parts. The Court makes the following determinations: 1) Plaintiffs fail to state a plausible Equal Protection claim against Logan Health, Cabinet Peaks, and Providence (collectively, "Defendant hospitals") under 42 U.S.C. § 1983; 2) The Court lacks subject matter jurisdiction over Plaintiffs' claim for monetary relief against DPHHS; 3) Plaintiffs

7

lack standing to seek declaratory relief setting aside DPHHS's classification of pacemakers as prosthetic devices and Montana's statutory cap on non-economic damages; 4) Plaintiffs' fail to state a plausible RICO claim against Logan Health, Dr. Highfill, and Nurse Allen; 5) the Court lacks personal jurisdiction over Providence and Dr. Chaganur; and 6) having dismissed all federal claims and out-of-state Defendants, the Court lacks jurisdiction over Plaintiffs' remaining claims of medical malpractice and loss of consortium against the Montana healthcare providers. The Court will dismiss Plaintiffs' Fifth Amended Complaint (Doc. 109).

## I.    Plaintiffs fail to state a plausible Equal Protection claim against Defendants Logan Health, Cabinet Peaks, and Providence.

Plaintiffs bring a claim under 42 U.S.C § 1983 in which they allege that Cabinet Peaks, Logan Health, and Providence violated the Equal Protection Clause. (Doc. 109 at 17.) Plaintiffs allege that Defendant hospitals engaged in unconstitutional wealth discrimination by denying Mrs. Tackett a pacemaker on the grounds that she could not afford to pay the Medicaid-required copay. (*Id.*) Defendants argue that Plaintiffs lack a right of action under § 1983 because Defendants are not state actors.

Defendants cite *Johnson v. Knowles*, 113 F.3d 1114 (9th Cir. 1997), and *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826 (9th Cir. 1999), as the controlling test to determine who qualifies as a state actor in the context of § 1983. Defendants argue that the Ninth Circuit's analysis in *Johnson* and *Sutton* requires a

determination that the defendant hospitals are not state actors. (*See* Docs. 52 at 12-13; 45 at 18-22; 107 at 10-11.)

"To state a claim under § 1983, a plaintiff must both (1) allege the deprivation of a right secured by the federal Constitution or statutory law, and (2) allege that the deprivation was committed by a person acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). Private parties generally cannot be held liable under § 1983. *See Sutton*, 192 F.3d at 835; *Hartsoe v. Bullock*, 2019 WL 266301 at *9 (D. Mont. 2019) (quoting *Am. Mfrs. Mutual Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)) ("Section 1983 does not reach 'merely private conduct, no matter how discriminatory or wrongful.'"). For a private party to be held liable under § 1983, that party needs to meet one of four tests: 1) public function, 2) joint action, 3) governmental compulsion or coercion, or 4) governmental nexus. *Id.* at 835-36. Defendant hospitals meet none of the four tests.

a. Public Function

A private actor may be considered a state actor under the public function test when performing a function that traditionally has been the exclusive function of the state. *Johnson*, 113 F.3d at 1118. Defendant hospitals assert that providing healthcare has never been the exclusive function of the state. (Docs. 45 at 20; 52 at 13.) Health care characteristically has been shared between the public and private sector and has not been an exclusive function of the state. *See Modaber v. Culpeper*

9

*Mem'l Hosp., Inc.*, 674 F.2d 1023, 1026 (4th Cir. 1982) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352-54 (1974)) ("Although health care is certainly an 'essential public service,' it does not involve the 'exercise by a private entity of powers traditionally exclusively reserved to the State.'").

*Modaber* proves to be directly analogous. The plaintiff in *Modaber* sued a private nonprofit hospital under § 1983. The hospital received significant government funding and "accepted Medicare and Medicaid patients." *Modaber*, 674 F.2d at 1024. The Fourth Circuit determined that accepting the privileges of state funding and licensing failed to demonstrate that the hospital qualified as a state actor under § 1983. *Id.* at 1026-27. The Court agrees with the reasoning of the Fourth Circuit. Private hospitals do not tread into a power traditionally reserved to the State while providing healthcare, even when the government funds that healthcare. *Id.*; *see also Jackson*, 419 U.S. at 354 ("Doctors […] provid[e] arguably essential goods and services, 'affected with a public interest.' We do not believe that such a status converts their every action, absent more, into that of the State.").

b. Joint Action

A private actor also may be considered a state actor under the joint action test by willfully participating in a joint activity with the state to cause a constitutional deprivation. *Johnson*, 113 F.3d at 1119. Defendants argue that Plaintiffs' allegations fail to indicate a joint action between Defendants and the government. (Docs. 45 at

20; 52 at 13; 107 at 10-11.) Plaintiffs contend that Defendant hospitals make decisions regarding billing for pacemakers based on Medicaid's reimbursement policies. (Doc. 107 at 17.) This claim on its own proves insufficient because it fails to demonstrate any intent by Defendant hospitals to deprive Plaintiffs of a constitutional right. "The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State." *Jackson*, 419 U.S. at 350.

Plaintiffs must allege a "meeting of the minds" between Defendant hospitals and the state. *Fonda v. Gray*, 707 F.2d 435, 438 (9th Cir. 1983). Plaintiffs allege only that Defendant hospitals billed Medicaid patients in accordance with Medicaid's reimbursement rates. As the Ninth Circuit determined in *Fonda*, it cannot be the duty of the private actor to determine whether the government acts with unlawful objectives. *See id.* The plaintiff in *Fonda* sued two banks that had complied with a Federal Bureau of Investigation examination of plaintiff's bank accounts. The plaintiff claimed that this cooperation violated her constitutional rights. *Id.* at 436-37. The Ninth Circuit determined that mere acquiescence of bank employees to the request of the Federal proved insufficient, under § 1983, to establish a conspiracy between banks and government to deprive plaintiff of her constitutional rights. *Id.* at 438-439. Defendant hospitals similarly are not liable under the joint action test simply for complying with state regulations for Medicaid.

    c.  State Coercion Test

11

Private actors may be considered state actors under the state coercion test when the state has coerced or significantly encouraged the private actor to do something. *Johnson*, 113 F.3d at 1119. Plaintiffs imply that Montana Medicaid coerced Defendant hospitals to deny Mrs. Tackett a pacemaker because Defendant hospitals receive Medicaid reimbursements from the government. (Doc. 109 at 17-21.) Defendant hospitals argue that Montana Medicaid's provision of reimbursement to a private hospital for medical treatment cannot constitute coercion. (Doc. 45 at 21.)

The fact that Defendant hospitals treat patients who receive their health insurance through Montana Medicaid does not, on its own, attribute a hospital's actions attributable to the state. *See Modaber*, 674 F.2d at 1026-27. *Modaber* noted that accepting Medicaid funding failed to demonstrate coercion in part because Medicaid "benefits are paid to the patients and not the hospitals." *Id*. at 1027. Plaintiffs make no allegations to suggest that receiving reimbursements from Medicaid would cause Defendant hospitals to deny or limit healthcare coverage.

d. Governmental Nexus

The governmental nexus test requires that a nexus exist between the private actor and the state sufficient for the actions of the private actor to be fairly treated as state action. *Johnson*, 113 F.3d at 1120. A plaintiff cannot satisfy the governmental nexus test based solely on the fact that a private actor remains subject to state

regulation. *See Johnson*, 113 F.3d at 1120. Plaintiffs fail to allege a "sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson*, 419 U.S. at 351. Doctors, lawyers, and utility companies fail to become state actors simply because they provide highly regulated services "affected with a public interest." *Id.* at 354. Defendant hospitals do not meet the nexus test simply because of the nature of the services they provide.

Plaintiffs fail to raise any allegations that would allow the Court to infer that that Defendant hospitals stand as a state actor for the purpose of Plaintiffs' § 1983 claim. Defendant hospitals' status as private actors prevents Plaintiffs from making a § 1983 claim against them. Plaintiffs thus fail to state a plausible claim for relief under § 1983 and the Equal Protection clause.

## II.    The Court lacks subject matter jurisdiction over Plaintiffs' claims for monetary relief against DPHHS.

Plaintiffs seek monetary damages from DPHHS under the theory that Mrs. Tackett died as the result of unconstitutional DPHHS policies. (*Id.* at 21-24.) DPHHS argues that the Court lacks subject matter jurisdiction over Plaintiffs' claims for monetary relief because DPHHS is not subject to liability under § 1983. (Doc. 66 at 8, 9 & 12.) DPHHS also argues that the Eleventh Amendment to the U.S. Constitution bars Plaintiffs' claims for monetary damages against DPHHS. (*Id.*)

State agencies cannot be sued by private citizens under § 1983. *See Holladay v. Montana*, 506 F.Supp 1317, 1321 (D. Mont. 1981). Plaintiffs cannot sue DPHHS under § 1983. Suing Director Adam Meier in his official capacity provides no exception. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989).

Additionally, the Eleventh Amendment bars lawsuits against state agencies for monetary damages unless a state has waived immunity to suit. *See Spokane Cnty. v. State Dep't of Emp. Sec.*, 317 Fed.Appx. 599, 600-01 (9th Cir. 2008). Plaintiffs allege no waiver by the state of Montana on behalf of DPHHS.

## III.    Plaintiffs lack standing to challenge DPHHS' classification of pacemakers as prosthetic devices and Montana's statutory damages cap.

Plaintiffs argue that DPHHS violated various Medicaid statutes and the Fifth and Fourteenth Amendments of the U.S. Constitution by classifying pacemakers as prosthetic devices (Doc. 109 at 19-23.) Plaintiffs request that the Court declare DPHHS's fee schedule and classification for pacemakers unconstitutional because the failure to pay for the entire cost of a pacemaker discriminates against potentially lifesaving care. (*Id.*)

Plaintiffs bear the burden to demonstrate injury-in-fact, causation, and redressability to establish standing. *Davidson v. Kimberly Clark-Corp.*, 889 F.3d 956, 967 (9th Cir. 2018). To seek declaratory relief Plaintiffs also must show that

they face "a very significant possibility of future harm; it is insufficient for them to demonstrate only past injury*." San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996); *Munns v. Kerry*, 782 F.3d 402, 411 (9th Cir. 2015) (recognizing that "past exposure to harmful or illegal conduct" does not confer standing for prospective relief; there must be a "real or immediate threat" of future harm).

A plaintiff who sues based on injuries to a decedent generally lacks standing to pursue declaratory or injunctive relief. *See, e.g.*, *Munns*, 782 F.3d at 411–12; *Martinez v. Corizon Health Inc.*, 2017 WL 11506311 (N.D. Cal. Feb. 10, 2017); *Neuwroth v. Mendocino Cnty.*, 2016 WL 379806, at *3 (N.D. Cal. Jan. 29, 2016); *Cal. Advocates for Nursing Home Reform, Inc. v. Chapman*, 2013 WL 5946940 (N.D. Cal. 2013). Plaintiffs would be required to demonstrate a "real or immediate threat" of experiencing the same injuries as the decedent to establish standing for declaratory relief. *Munns*, 782 F.3d at 411–12.

Plaintiffs make no such showing here. The injuries alleged by Plaintiffs already have occurred. No future injury to Plaintiffs could be anticipated related to DPHHS's classification of pacemakers. Plaintiffs lack the standing necessary to seek declaratory relief. Without standing, the Court lacks subject matter jurisdiction over Plaintiffs' claim. *Palmdale Hills Prop., LLC v. Lehman Com. Paper, Inc. (In re Palmdale Hills Prop., LLC)*, 654 F.3d 868, 873 (9th Cir. 2011).

15

Plaintiffs also argue that Montana Code Annotated § 25-9-411, which limits non-economic damage awards in medical malpractice cases, violates the Montana and U.S. Constitution. Plaintiffs have not been awarded damages that would be subject to Montana's statutory cap. The U.S. Supreme Court explained in *Lujan v. Defs. of Wildlife* that an injury in fact must be "actual or imminent, not 'conjectural' or 'hypothetical.'" 504 U.S. 555, 560 (1992) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). Plaintiffs' alleged injury by the Montana's statutory cap proves mere conjecture at this stage. Plaintiffs lack standing to raise this claim until such time as a jury determines that Plaintiffs' non-economic damages would exceed the statutory cap.

## IV.    Plaintiffs fail to allege sufficient facts to maintain a plausible RICO claim.

Plaintiffs argue that Defendants Logan Health, Dr. Highfill, and Nurse Allen ("Logan Health Defendants") have defrauded the Montana Medicaid system in violation of RICO. Plaintiffs allege that the Logan Health Defendants regularly billed Medicaid via wire for services that they either did not perform at all or did not perform in a satisfactory manner. (Doc. 109 at 28-29.) Plaintiffs claim that the Logan Health Defendants' practice of falsifying bills and providing substandard treatment under Montana Medicaid deprived Plaintiffs of their property right to the services of Mrs. Tackett after her death. (*Id.* at 27.)

Logan Health Defendants argue that Plaintiffs' RICO claims against them should be dismissed for failure to state a claim for the following reasons: 1) Plaintiffs fail to allege the predicate wire fraud offenses with enough particularity; 2) Plaintiffs fail to plead a cognizable injury to a business or property interest; 3) Plaintiffs fail to allege sufficient causation between the predicate offenses and the alleged damages; and 4) Plaintiffs fail to plead a pattern of racketeering activity. (Doc. 107 at 12, 14, 16 & 17.)

The Court agrees that Plaintiffs' RICO claim should be dismissed for failure to state a claim. In alleging fraud, Plaintiffs are held to the heightened pleading standard of Rule 9(b). Fed. R. Civ. P. Rule 9(b). Plaintiffs must "state with particularity the circumstances constituting fraud or mistake." *Id.* "Rule 9(b) ensures that allegations of fraud are specific enough to give defendants notice of the particular conduct which is alleged to constitute the fraud charged so that they can defend against the charge." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Rule 9(b) "requires the identification of the circumstances constituting fraud." *Bosse v. Crowell Collier & Macmillan*, 565 F.2d 602, 611 (9th Cir. 1977) (emphasis added).

The Ninth Circuit has determined that a complaint fails to sufficiently make a predicate wire fraud claim under RICO if "no specifics of time, place, or nature of the alleged communications are pleaded." A*lan Neuman Prods., Inc. v. Albright*, 862

17

F.2d 1388, 1392 (9th Cir. 1988). Plaintiff argues that "billing for substandard services" to Mrs. Tackett on or about the dates of care provided by the Complaint provides sufficient specifics. (Doc. 112 at 2.) The Court recognizes that these facts may be sufficient to plead medical malpractice under a theory of substandard care. These facts do not lend sufficient support, however, to Plaintiffs' claim that Logan Health has falsified bills in order to receive reimbursement from Montana Medicaid. Plaintiffs also fail to provide any allegations that could demonstrate a pattern of the alleged fraudulent billing or a conspiracy by the Logan Health Defendants to do so. Plaintiffs fail to meet the heightened standard for pleading a RICO wire fraud claim. A*lan Neuman Prods., Inc.*, 862 F.2d at 1392.

Plaintiffs cannot remedy this infirmity by the filing of a sixth amended complaint. Plaintiffs fail to plead a cognizable injury to a business or property interest. "[I]n order to state a RICO claim, a plaintiff must show harm to a specific business or property interest." *Avalos v. Baca*, 596 F.3d 583, 594 (9th Cir. 2010). The injury to business or property must arise from the "conduct constituting the [RICO] violation." *Sedima, S.P.R.L. v. Imrex Co., Inc*., 473 U.S. 479, 496 (1985).

Damages arising from a wrongful death claim do not constitute an injury to property. *See Drake v. B.F. Goodrich Co.*, 782 F2d. 638, 644 (6th Cir. 1986); *Circiello v. Alfano*, 612 F.Supp.2d 111, 115 (D. Mass. 2009). Plaintiffs have failed to state a claim upon which relief can be granted under RICO because Plaintiffs

claim that Mrs. Tackett's death was their sole loss of a property interest. (Doc. 109 at 27.) Plaintiffs wrongful death claim cannot constitute an injury in this case. Montana law provides that an injury to property "consists in depriving [the property's] owner of the benefit of [the property], which is done by taking, withholding, deteriorating, or destroying it." Mont. Code Ann. § 27-1-106(2). Plaintiffs' wrongful death and loss of consortium claims remain intact.

Plaintiffs also fail to demonstrate a connection between their alleged harms and the alleged wire fraud offenses. "To have standing under § 1964(c), a civil RICO plaintiff must show [. . .] that his harm was 'by reason of' the RICO violation, which requires the plaintiff to establish proximate cause." *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2005). Plaintiffs allege that Logan Health Defendants made false statements to Medicaid regarding the services that they provided to Plaintiff. (Doc. 109 at 28.) Plaintiffs fail to explain how Logan Health Defendants' alleged false statements could have led to substandard care for Mrs. Tackett or caused any other injury to Plaintiffs.

The U.S. Supreme Court's decision in *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451(2006), proves similar to this case. The plaintiff in *Anza* sued his competitor under RICO for failing to charge customers New York sales tax, which plaintiff alleged allowed a competitive advantage. *Anza*, 547 U.S. at 453-54. The U.S. Supreme Court determined that the State of New York was the direct victim of

plaintiffs' alleged RICO violation, and not the plaintiff. *Id.* at 457-58. Plaintiffs' allegations in this case would reveal Medicaid Montana to be the victim of Logan Health Defendants alleged fraud. Only Medicaid Montana would be injured by providing payments to a health care provider for false services. *Id.* Plaintiffs' injury is too attenuated from the alleged harm to sustain a claim.

## V. The Court lacks jurisdiction over Plaintiffs' Washington state medical malpractice claims against Providence and Dr. Chaganur.

The Court may not entertain claims against a party over which it lacks personal jurisdiction. *See* Fed. R. Civ. Pro. 12(b)(2). To determine whether the Court may exercise personal jurisdiction over Providence and Dr. Chaganur, the Court first must determine whether Montana's long-arm statute has been satisfied. *Touchcom Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1410-11 (Fed. Cir. 2009). If the Plaintiff satisfies Montana's long-arm statute, the Court must then determine whether exercising personal jurisdiction would violate due process. *Id.*

Plaintiffs suggest that the Court possesses personal jurisdiction over Defendants for the following reasons. Providence provided guidance to Cabinet Peaks staff while Mrs. Tackett was in Montana. Providence routinely takes patients from Montana. And Providence directed Mrs. Tackett's transfer to their hospital in Washington state. (Doc. 68 at 2-3.)

Providence and Dr. Chaganur argue that Plaintiffs' Complaint fails to satisfy either of the two-steps to establish personal jurisdiction. (Doc. 52 at 7.) Providence

20

and Dr. Chaganur reside in Washington. Plaintiffs allege that all of the medical services Providence and Dr. Chaganur provided to Mrs. Tackett took place in Washington. Montana's long arm statute provides jurisdiction over parties who commit a tort within the state of Montana. Mont. R. Civ. Pro. 4(b)(1)(B). Plaintiffs do not allege that Providence or Dr. Chaganur provided medical services in Montana. Plaintiffs instead allege that Providence directed Mrs. Tackett's transfer to Providence's Washington hospital. Whether the Court may exercise jurisdiction over Providence hinges upon Providence's communications with Cabinet Peaks staff.

The Montana Supreme Court determined in *Threlkeld v. Colorado*, 16 P.3d 359 (Mont. 2000), that mere communications do not confer jurisdiction where an out-of-state injury proves dominant over the claim. In *Threlkeld*, the plaintiffs' horse died while under the care of veterinarians at Colorado State University in Colorado. 16 P.3d at 360-66. The plaintiffs, residents of Montana, sued several Colorado entities for veterinary malpractice, deceit, and negligent misrepresentation or fraud. The deceit, fraud, and misrepresentation claims allegedly arose from telephone conversations between the parties.

Montana lacked jurisdiction where the allegedly wrongful conversations served as part of an ongoing relationship between the parties. *Id.* at 364–65. The Montana Supreme Court placed substantial weight on the fact that the alleged

misrepresentations that took place while plaintiffs were in Montana were defined by their connection to the treatment and death of the horse. The treatment and death of the horse both occurred in Colorado. No long-arm jurisdiction existed where the defendants' in-state conduct was auxiliary to its out-of-state conduct. *Id.* at 365.

Providence and Dr. Chaganur treated Mrs. Tackett in the state of Washington. (Doc. 109 at 8-10.) Even taking Plaintiffs' allegations that Providence directed the transfer of Mrs. Tackett as true, Plaintiffs fail to allege the occurrence of any tort caused by Providence or Dr. Chaganur within the state of Montana. Plaintiffs only allege that medical malpractice occurred while Mrs. Tackett was under the care of Dr. Chaganur and Providence, where they allegedly should have acted upon Dr. Highfill's notes regarding the use of a pacemaker. Plaintiffs' argument proves similar to the *Threlkeld* plaintiffs. In fact, Plaintiffs do not even allege that Providence's decision to initiate Mrs. Tackett's the transfer to Washington was wrongful.

Plaintiffs' medical malpractice claims against Providence and Dr. Chaganur fail to satisfy Montana's long-arm statute. The Court thus lacks personal jurisdiction over Providence and Dr. Chaganur. *Threlkeld*, 16 P.3d at 365-66.

## VI.    The Court lacks jurisdiction over Plaintiffs remaining state law claims.

The Court has dismissed Plaintiffs' § 1983 claims, RICO claim, claims for declaratory relief, and the Washington state medical malpractice and loss of

consortium claims against Providence and Dr. Chaganur. Plaintiffs only remaining claims allege Montana state medical malpractice and loss of consortium against Montana resident healthcare providers. The Court may no longer maintain jurisdiction over Plaintiffs' Montana state law claims under 28 U.S.C. §1367(a). Plaintiffs' Montana state law claims are no longer part of the same case or controversy over which this Court maintains original jurisdiction. *See* 28 U.S.C. § 1251. A federal court may decline to exercise supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction." *Id.*; §1367(c)(3). The Court declines to exercise supplemental jurisdiction here.

Plaintiffs have requested that the Court dismiss without prejudice the § 1983 and RICO claims against Logan Health so that any potential claims can be reasserted if information revealed through a future discovery process so warrants. (Doc. 114.) The Court's determination that Defendant hospitals are not state actors requires dismissal of the § 1983 claim with prejudice. The Court will dismiss the RICO claim without prejudice. Plaintiffs may reassert their RICO claim against Logan Health if new information is revealed that would remedy the infirmities of Plaintiffs' claim as stated in this Order.

## VII.  The Court will deny all other pending motions in this case.

Two additional motions filed by Plaintiffs remain pending in this case. Plaintiffs filed a motion to stay pending a decision by the Montana Medical Legal

Panel. (Doc. 54.) Plaintiffs' motion is dismissed as moot. The Montana Medical Legal Panel rendered its decision in this case. (Doc. 109 at 4.)

Plaintiffs also filed a motion for sanctions against Logan Health. (Doc. 95.) Plaintiffs allege that Logan Health failed to participate in good faith at the settlement conference for this case. (*Id.*) Plaintiffs express frustration that Logan Health did not make a larger settlement offer, especially in light of the expenses that Plaintiff Brian Tackett incurred to attend the settlement conference. Plaintiffs' allegations fail to demonstrate that Logan Health failed to negotiate in good faith. Unlike the cases cited by Plaintiffs, Logan Health made an opening offer at the settlement conference and entered into negotiations. *Contra Arneault v. O'Toole*, No. CIV.A. 1:11-95, 2014 WL 1117900, at *2 (W.D. Pa. Mar. 20, 2014) (imposing sanctions after plaintiff refused to present any offer). Plaintiffs' motion for sanctions (Doc. 95) will be denied.

Accordingly, **IT IS ORDERED** that Defendants' Motions to Dismiss (Docs. 51, 65, 89 & 106) are **GRANTED**. Plaintiffs' Motion to Stay (Doc. 54) and Motion for Sanctions (Doc. 95) are **DENIED**. Plaintiffs' Fifth Amended Complaint (Doc. 109.) is **DISMISSED**.

Dated this 30th day of March, 2022.

Brian Morris, Chief District Judge
United States District Court