THE HONORABLE THOMAS O. RICE

MARKUS W. LOUVIER, WSBA #39319
STEPHANIE A. CROCKETT, WSBA #62797
Evans, Craven & Lackie, P.S.
818 West Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632
mlouvier@ecl-law.com
scrockett@ecl-law.com
*Attorneys for Defendants*

IN UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BRIAN TACKETT,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>PROVIDENCE SACRED HEART MEDICAL CENTER, KAVITHA CHAGANUR, MD,<br><br>　　　　　　Defendants. | Cause No. 2:24-cv-00262-TOR<br><br>REPLY IN SUPPORT OF DEFENDANT PROVIDENCE SACRED HEART MEDICAL CENTER'S MOTION FOR SUMMARY JUDGMENT<br><br>Hearing Date: March 2, 2026<br>Without Oral Argument |

REPLY IN SUPPORT OF DEFENDANT PROVIDENCE SACRED HEART MEDICAL CENTER'S MOTION FOR SUMMARY JUDGMENT - page 1

## I. INTRODUCTION

Plaintiff's response relies almost exclusively on reports and affidavits by expert Dr. Alexander Marmureanu. Plaintiff's submissions fail where:

1. Dr. Marmureanu has not established that he is an expert in fields of medicine in which he does not practice (Dr. Chaganur - hospitalist medicine, Dr. Ball - cardiology) in a State in which he is not licensed (Washington).

2. Dr. Marmureanu's statements are speculative and conclusory;

3. Plaintiff has failed to specify evidence of an informed consent claim; and

4. Plaintiff fails to provide sufficient evidence to support his corporate negligence claim, provides contradictory expert testimony on part of Dr. Marmureanu, and mischaracterizes the discovery in this matter.

## II. ARGUMENT AND AUTHORITIES

**A. Dr. Marmureanu is not familiar with the standard of care.**

RCW 7.70.040 requires proof that a provider failed to exercise that degree of care, skill, and learning expected of a reasonable provider "***in the profession or class to which he belongs, in the State of Washington***, acting in the same or similar circumstances." This requires competent, qualified expert testimony. S*tone v. Sisters of Charity*, 2 Wn. App. 607, 469 P.2d 229 (1970).

1. *A National Standard of Care Has Not Been Established.*

In *Adams v. Richland Clinic*, 37 Wn.App. 650, 655, 681 P.2d 1305 (1984)

REPLY IN SUPPORT OF DEFENDANT PROVIDENCE SACRED HEART MEDICAL CENTER'S MOTION FOR SUMMARY JUDGMENT - page 2

the Court characterized the standard of care under RCW 7.70.040(1) as being a "statewide determination. To establish a claim for violation of the standard of care, the plaintiff "must present evidence of a statewide standard of care." *Id*. The only type of expert competent to testify as to the standard of care required of a practitioner in the State of Washington is an expert who knows the practice and standard of care in Washington. *McKee v. American Home Products*, 113 Wn.2d 701, 706-07, 782 P.2d 1045 (1989). In *Winkler v. Giddings*, 146 Wash.App. 387, 190 P.3d 117 (Div.3, 2008), the trial court refused to permit the plaintiff's standard of care expert witness to testify at trial where the witness "made an educated assumption" that Washington followed a national standard of care.

In *Boyer v. Morimoto*, 10 Wash.App. 506, 449 P.3d 285 (Div.3 2019), summary judgment was granted to the defendant physician where the plaintiff's expert was not familiar with the Washington standard of care. The expert claimed that a national standard of care applied based upon his work in other states. The Court found his declaration insufficient and affirmed summary judgment. *Id*. at 524 (expert showed no exposure to practice in Washington, didn't speak to a Washington physician, or reviewed literature concerning Washington standards).

Dr. Marmureanu is not licensed to practice medicine in Washington. *ECF No. 279-6, pg. 1*. He claims familiarity with the Washington standard of care based on past expert work "across multiple jurisdictions" and his claim that national

REPLY IN SUPPORT OF DEFENDANT PROVIDENCE SACRED HEART
MEDICAL CENTER'S MOTION FOR SUMMARY JUDGMENT - page 3

guidelines create a standard of care for cardiovascular diagnosis, surgical treatment, interdisciplinary coordination, and patient management. *ECF No. 179-8*. Dr. Marumureanu has not confirmed that the Washington standard of care mirrors a so-called national standard of care using the methods identified in *Boyer*.

### 2. Dr. Marmureanu is not a Professional Equal of Defendants.

Plaintiff's required expert testimony must establish the standard of professional practice at the time of the alleged injury and a violation of that standard through the testimony of the **professional equals** of the defendant physician. *Swanson v. Brigham*, 18 Wn. App. 647, 651, 571 P.2d 217 (1977) (Emphasis added). Plaintiff cites *Hill v. Sacred Heart Med. Ctr.,* 143 Wash.App. 438, 447, 177, P.3d 1152, 1157 (2008) with a highly misleading quote indicating that a physician with a medical degree is qualified to render an opinion "on any sort of medical question…so long as the physician has sufficient expertise to demonstrate familiarity with the procedure or medical problem at issue…" *ECF No. 179 - Response, pg. 7*. This statement by *Hill* related to **causation**. *Hill* never stated that one physician specialist could testify against *any* physician specialist by virtue of holding a medical degree. To the contrary, a medical specialist cannot impose its standard of care upon a general practitioner, unless the specialist shows the requisite knowledge of the standard of care applicable to the generalist. *White v. Kent Med. Ctr.,* 61 Wn.App. 163, 174 (Div. 1, 1991); *McKee, supra,* 113 Wn.2d

REPLY IN SUPPORT OF DEFENDANT PROVIDENCE SACRED HEART MEDICAL CENTER'S MOTION FOR SUMMARY JUDGMENT - page 4

701, 782 P.2d 1045 (1989) (physician not competent to testify against pharmacist).

Here, Plaintiff attempts to use Dr. Marmureanu to opine as to the standard of care applicable to Dr. Timothy Ball, a board-certified cardiologist, and Dr. Kavitha Chaganur, a board-certified internal medicine specialist and PSHMC hospitalist. Dr. Marmureanu has not indicated that he is familiar with the standard of care for cardiologists or hospitalist physicians. Nor has he provided sufficient factual foundation to allow the court to evaluate whether the assertion is supported.

It is clear based upon the record that Dr. Marmureanu is not board-certified in internal medicine, cardiology, electrophysiology, and is not a hospitalist. *See ECF Nos. 179-4 – 179-8*. Plaintiff misrepresents Dr. Marmureanu as a board-certified cardiologist; he is a cardiothoracic surgeon. *Id.; ECF No. 179-2 at ¶9*. Plaintiff attempts to point out that Dr. Chaganur and Dr. Ball had "gaps in their knowledge." *ECF No. 179, pg. 3*. This is inaccurate where cardiothoracic surgery, cardiology, electrophysiology, and internal medicine are all distinct specialties.

Dr. Marmureanu opines generally as to guidelines and practices that govern "cardiac care" and states that the standard of care required "the provider" address alleged "documented evidence of a life-threatening but potentially preventable condition" or arrange for a referral to an electrophysiologist. *ECF No. 179-5*. Dr. Marmureanu cannot opine to any and all providers in Mrs. Tackett's care simply because she had a cardiac condition. Dr. Marmureanu does not specify the

REPLY IN SUPPORT OF DEFENDANT PROVIDENCE SACRED HEART MEDICAL CENTER'S MOTION FOR SUMMARY JUDGMENT - page 5

applicable standard of care as to an internal medicine specialist or cardiologist. While he claims that "national guidelines" apply to this case, Dr. Marmureanu does not specify a particular specialty to whom these guidelines apply. Dr. Marmureanu failed to provide foundation to establish his familiarity with the standard of care for a hospitalist or cardiologist. He did not explain how national cardiac guidelines apply to a hospitalist. He offers no evidence of familiarity with the standards of practice applicable to cardiology or hospitalist medicine.

Finally, in Plaintiff's initial disclosures he provided the first of many reports from Dr. Marmureanu, written around March 2023. *Louvier Decl. Ex. 1*. At the time of authoring this report, Dr. Marmureanu had reviewed the PSHMC medical records and original Complaint naming PSHMC as a Defendant. *Id*. Interestingly, Dr. Marmureanu offered no criticism whatsoever of care provided by PSHMC, Dr. Chaganur, or Dr. Ball. *Id*. Plaintiff has not established through a qualified expert the applicable standard of care, and Plaintiff's claims must be dismissed.

**B. Plaintiff's conclusory expert testimony concerning causation is insufficient to satisfy their burden of proof.**

RCW 7.70.040 requires a plaintiff prove the alleged deviation from the standard of care caused the injury complained of. In Washington, medical testimony must be proffered to establish the causal relationship between the liability-producing event and the claimed physical disability or injury resulting from the event. *O'Donoghue v. Riggs,* 73 Wn.2d 814, 440 P.2d 823 (1968). Such

REPLY IN SUPPORT OF DEFENDANT PROVIDENCE SACRED HEART MEDICAL CENTER'S MOTION FOR SUMMARY JUDGMENT - page 6

medical testimony must be definite enough to establish that the act complained of probably or more likely than not caused the subsequent injury or disability. *Orcutt v. Spokane County*, 58 Wn.2d 846, 364 P.2d 1102 (1961); *O'Donoghue,* 73 Wn.2d at 824. A bare allegation of fact by affidavit without any showing of evidence is insufficient to raise a genuine issue of fact for purposes of a motion for summary judgment. *Meissner v. Simpson Timber Company*, 69 Wn. App. 949, 421 P.2d 674 (1966). Expert testimony that is speculative or conclusory is not enough to sustain a verdict in favor of the plaintiff. See, e.g., *O'Donoghue,* supra.

Here, Dr. Marmureanu generally opines that had Mrs. Tackett been provided with a device at the time of her PSHMC admission, her risk of sudden cardiac death would have been significantly reduced, and she likely would not have died. *ECF No. 179-4, pg. 10*. While he generally also indicates she should have had a referral to an electrophysiologist at the time of her PSHMC admission, Plaintiff's expert fails to specify how PSHMC doing more than monitoring her cardiac condition during treatment of her acute stroke, and repeatedly discussing and emphasizing follow up on her cardiac condition with her primary cardiologist in Montana, was insufficient and proximately caused her death 8 months later. *ECF No. 179-5, pg. 2*. A general assertion that this was a "missed opportunity for *potentially* life-saving intervention" is insufficient. *ECF No 179-6, pg. 3*.

Notably, Dr. Marmureanu explained in his prior deposition in December

REPLY IN SUPPORT OF DEFENDANT PROVIDENCE SACRED HEART MEDICAL CENTER'S MOTION FOR SUMMARY JUDGMENT - page 7

2023, that Mrs. Tackett needed a referral to an electrophysiologist in November 2018, "after she had the stroke" and that there "is no standard of care" in regarding when to have a follow up discussion to cardiac device implantation. *Louvier Decl, EX. 2 (Marmureanu Depo 38:3-13, 39:7-12)*. Dr. Marmureanu stated the reason she did not get such referral was because her primary cardiologist essentially "abandoned the patient." *Id. at (58:22-25, 59:1-5)*. Plaintiff has failed to establish causation to support his claims against PSHMC.

**C. Plaintiff has failed to meet his burden on any informed consent claim.**

To sustain a claim for lack of informed consent, a plaintiff must prove, through expert testimony, that: (1) the health care provider failed to inform the patient of a material fact or facts relating to the treatment; (2) that the patient consented to treatment without being aware of or fully informed of such material fact(s), (3) a reasonably prudent patient under similar circumstances would not have consented to treatment if informed of such material facts, and (4) that the treatment in question proximately caused injury to the patient. RCW 7.70.050(1).

PSHMC owed no such informed consent duty independently to Mrs. Tackett. *Howell v. Spokane & Inland Empire Blood Bank,* 114 Wash.2d 42, 785 P.2d 815 (1990). Plaintiff argues generally that the hospital, Dr. Chaganur, and Dr. Ball should have informed Mrs. Tackett during her admission at PSHMC for an acute stroke of a risk of sudden cardiac death and informed her of certain

REPLY IN SUPPORT OF DEFENDANT PROVIDENCE SACRED HEART MEDICAL CENTER'S MOTION FOR SUMMARY JUDGMENT - page 8

options regarding cardiac device therapy. However, Plaintiff has failed to establish the elements of materiality (expert testimony is required to prove the existence of a risk, its probability of occurrence, and the harm which may result). *Bays v. St. Luke's Hosp.*, 63 Wn.App. 876, 881, 825 P.2d 319 (1992); RCW 7.70.050(2).

Moreover, Plaintiff ignores that PSHMC was aware that Mrs. Tackett had a treating cardiologist in her home state of Montana, PSHMC providers repeatedly emphasized to Mrs. Tackett that she needed to follow up with her primary cardiologist in Montana upon discharge, and sent correspondence to her primary cardiologist regarding the same. *ECF No. 174 (SOF No. 5-6)*. Plaintiff cannot reasonably argue that any alleged failure on part of PSHMC to communicate such information caused her death eight months post-discharge, where Dr. Marmureanu previously opined that Mrs. Tackett's Montana providers post-discharge from PSHMC saw Mrs. Tackett multiple times prior to her death and failed to follow a treatment plan to address her cardiac condition. *Louvier Decl., Ex. 1, pg. 8*.

**D. Plaintiff has failed to meet his burden as to corporate negligence.**

First, Plaintiff cites to *Essex v. Grant Cnty. Pub. Hosp. Dist. No. 1.,* 3 Wash.3d 1, 12, 546 P.3d 407 (2024) asserting hospitals owe a general duty of "safe and appropriate care" based upon various statutes or regulations. *Essex* was based upon laws applicable to emergency department physicians and its holding was explicitly so limited. *See*, *Essex,* 3 Wn.3d at 17 ("Where a hospital elects to

REPLY IN SUPPORT OF DEFENDANT PROVIDENCE SACRED HEART MEDICAL CENTER'S MOTION FOR SUMMARY JUDGMENT - page 9

provide emergency services, our statutes and regulations create a nondelegable duty concerning the provision of those services"). *Essex* did not remove the requirement that a Plaintiff prove the elements of corporate negligence. Plaintiff claims PSHMC is liable for corporate negligence based upon allegedly insufficient policies related to identification of "high-risk cardiac patients," "escalation for specialized evaluation," "supervises physician compliance with standard of care," or "safeguards discharge decisions for patients with severe cardiomyopathy." *ECF No. 179, pg. 4*. However, Plaintiff's expert already explained in 2023, that a medical facility is not required to have a specific policy or procedure that tells a provider when to refer a patient. *Louvier Decl, Ex. 2 (161: 10-17)*. He also explained that a hospital does not need a specific policy on when to refer a patient to electrophysiology, and that specific aspects of a provider's job is "the scope of practice" and part of physician judgment. *Id. at (161:24-25, 162: 1-18)*.

Second, Plaintiff's citation to various regulations, statutes, or other medical literature does ***not*** establish a standard of care claim. The elements of a standard of care claim are limited to the expert testimony requirement of RCW 7.70.040. RCW 7.70 does not refer to other statutes or administrative code provisions to define the standard of care. Negligence per se was abolished in 1986. *Mathis v. Ammons*, 84 Wash. App. 411 928 P.2d 431 (1996, 1997); RCW 5.40.050.

Third, Dr. Marmureanu has not expressed qualifications or familiarity with

REPLY IN SUPPORT OF DEFENDANT PROVIDENCE SACRED HEART MEDICAL CENTER'S MOTION FOR SUMMARY JUDGMENT - page 10

the standard of care applicable to a hospital in the State of Washington.

Fourth, Plaintiff asserts that PSHMC's Rule 30(b)(6) deponent defined the standard of care applicable to PSHMC. ECF No. 179, pages 3-4, 8. Contrary to Plaintiff's assertions, the representative never asserted that he was familiar with the standard of care nor that the standard of care was a national standard.

Fifth, there is no evidence or argument suggesting that any alleged corporate violation – absence of a policy, enforcement of a policy, inappropriate physician selection – caused harm. Without evidence of causation Plaintiff's claim fails.

Finally, Plaintiff misrepresents that he has requested multiple times, and that PSHMC failed to provide him with certain policies. *ECF No. 179, pg. 6*. Defendant has responded to all of Plaintiffs properly propounded Interrogatories and Requests for Production, and provided supplementation of certain requests shortly after Plaintiff sent his 12/5/2025 letter and prior to filing its Motion for Summary Judgment. *Louvier Decl., Exs 3-4, ECF Nos. 154-2 – 154-5*. Plaintiff agrees and admits that he asked for the first time through his 12/5/2025 letter that, he "exceeded the default limits" to written discovery requests, but went on to make additional requests through this letter. *ECF No. 179-3*. Plaintiff provides no reason as to why he could not have requested this information earlier, and PSHMC was under no obligation to respond to such informal and excessive discovery requests. *Fed. R. Civ. P. 33(a)(1)*.

REPLY IN SUPPORT OF DEFENDANT PROVIDENCE SACRED HEART MEDICAL CENTER'S MOTION FOR SUMMARY JUDGMENT - page 11

DATED this 27th day of January 2026.

        EVANS, CRAVEN & LACKIE, P.S.

        By:/s/ Markus W. Louvier
        MARKUS W. LOUVIER, WSBA #39319
        STEPHANIE A. CROCKETT, WSBA #62797

# CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

**_Plaintiff, Pro Se_**
Brian Tackett
POB 448
Troy, Montana 59935
Tackett59935@gmail.com

/s/ Markus W. Louvier
MARKUS W. LOUVIER, WSBA #39319
STEPHANIE A. CROCKETT, WSBA #62797
Attorneys for Defendants
818 West Riverside, Suite 250
Spokane, Washington 99201
(509) 455-5200/(509) 455-3632 Facsimile
mlouvier@ecl-law.com
scrockett@ecl-law.com

REPLY IN SUPPORT OF DEFENDANT PROVIDENCE SACRED HEART MEDICAL CENTER'S MOTION FOR SUMMARY JUDGMENT - page 13