THE HONORABLE THOMAS O. RICE

MARKUS W. LOUVIER, WSBA #39319
STEPHANIE A. CROCKETT, WSBA #62797
Evans, Craven & Lackie, P.S.
818 West Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632
mlouvier@ecl-law.com
scrockett@ecl-law.com

*Attorneys for Defendants*

IN UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BRIAN TACKETT,<br><br>Plaintiff,<br>vs.<br><br>PROVIDENCE SACRED HEART MEDICAL CENTER, KAVITHA CHAGANUR, MD,<br><br>Defendants. | Cause No. 2:24-cv-00262-TOR<br><br>DEFENDANTS' RULE 50 MOTION FOR JUDGMENT AS A MATTER OF LAW |

## I. INTRODUCTION AND RELIEF REQUESTED

Defendants Providence Sacred Heart Medical Center and Dr. Kavitha Chaganur, MD (collectively *Defendants*) seek judgment as a matter of law under Federal Rule of Civil Procedure 50(a) on five issues because there is no legally sufficient evidentiary basis for a jury to decide those issues.

***First***, Plaintiff Brian Tackett presented no credible expert testimony to support his medical- and corporate-negligence claims. Those claims require expert testimony to establish the standard of care, breach of the standard of care, and proximate cause, all of which are essential elements. Those elements require an expert with training and experience in the specific specialties and the controlling standards of care.

Plaintiff offered one expert witness for all specialties. But Dr. Marmureanu lacks experience and training in any of those specialties. He cannot establish the standards of care at issue here, let alone any breach or causation. Plaintiff's medical-negligence and corporate-negligence claims should be dismissed as a matter of law.

***Second***, Plaintiff pleaded no survival claim under RCW 4.20.046 against Defendants. Even if the Court allowed Plaintiff to pursue this claim at trial, it still must be dismissed because he failed to establish the essential elements of the underlying medical-negligence and corporate-negligence claims. Any survival claims should be dismissed.

***Third***, Plaintiff's wrongful-death claim should be dismissed for the same reasons, as Plaintiff presented no expert testimony to establish the standard of care, breach of the standard of care, or proximate cause.

***Fourth***, even if his claims are not dismissed, no evidence supports many of Plaintiff's alleged damages. And Washington law does not recognize other elements of Plaintiff's damages theories.

No legally sufficient evidentiary basis exists to allow a jury to find that Plaintiff is entitled to lost-business damages from his wife's death. Washington law does not recognize that loss as an element of wrongful-death damages. And there is no legally sufficient evidentiary basis for a jury to find consortium damages for Plaintiff's children. His children are not parties to the action and have asserted no claims.

***Fifth***, this Court should dismiss Dr. Chaganur from this lawsuit even if it does not dismiss claims against Providence. Dr. Chaganur is the hospitalist who coordinated with cardiology. Every alleged error offered by Plaintiff implicates cardiology, not Dr. Chaganur. No alleged negligence is tied to her. She should be dismissed from this case.

This Court should grant judgment as a matter of law under Rule 50(a) and dismiss this action.

## II. FACTUAL BACKGROUND

Ms. Tackett was diagnosed with and treated for heart failure by her primary cardiologist, Dr. William Highfill, in Libby, Montana. She received medical therapy for that condition since early 2018.

On November 1, 2018, she was transferred to Providence Sacred Heart Medical Center for an acute stroke. Providence treated her stroke during a three-day admission. Because of her preexisting cardiomyopathy, the cardiology team participated in her care. Before discharge on November 4, two cardiology providers advised her to follow up with her Montana cardiologist about her cardiac condition, and documentation of the admission was sent to Dr. Highfill. She died nearly nine months after her discharge from Providence.

Brian Tackett, as the personal representative of his late wife's estate, sued Defendants for medical and corporate negligence. At trial, Plaintiff called no cardiologist or electrophysiologist experts. He called Dr. Alexander Marmureanu, a cardiothoracic surgeon. He holds no Washington license. He is not a hospitalist and is not board certified in internal medicine, cardiology, or electrophysiology.

Plaintiff called no other medical expert. Nor did he call any expert on hospital administration.

## III. ISSUES PRESENTED

No substantial evidence exists to support a finding of medical- and corporate-negligence. Plaintiff offered no evidence of any standard of care that was breached or that any breach by Defendants caused Ms. Tackett's death. Are Defendants entitled to judgment as a matter of law under Rule 50(a)? *Yes.*

In the alternative, Dr. Chaganur should be dismissed from this case even if this Court does not dismiss claims against all Defendants. Plaintiff offers no evidence relating the specific care performed by Dr. Chaganur. She breached no standard of care nor did any of her actions cause Ms. Tackett's death. Is Dr. Chaganur entitled to judgment as a matter of law under Rule 50(a)? *Yes.*

## IV. LEGAL AUTHORITY AND ARGUMENT

### A. Legal standard for judgment as a matter of law.

Federal Rule of Civil Procedure 50 provides:

> (a) Judgment as a Matter of Law.
> (1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

Fed. R. Civ. P. 50(a). A grant of judgment as a matter of law "is appropriate when the evidence presented at trial permits only one reasonable conclusion." *Santos v. Gates*, 287 F.3d 846, 851 (9th Cir. 2002). A motion for a judgment as a matter of law is properly granted "if no reasonable juror could find in the non-moving party's favor." *Torres v. City of Los Angeles*, 548 F.3d 1197, 1205–06 (9th Cir. 2008) (affirming entry of judgment as a matter of law).

**B. No reasonable juror could find in Plaintiff's favor on his medical-negligence claim because he could not establish the applicable standard of care, let alone breach or causation.**

Judgment as a matter of law should be granted on Plaintiff's claim for medical negligence because Plaintiff's one expert is not qualified to establish the standard of care, that Defendants breached it, or that any breach caused Ms. Tackett's death.

A medical negligence claim requires a plaintiff to establish the applicable standard of care, breach of the standard of care, and proximate cause. RCW 7.70.040; *Reyes v. Yakima Health Dist.*, 191 Wn.2d 79, 86, 419 P.3d 819, 822–23 (2018).

Expert testimony is required when an essential element in the case is best established by an opinion that is beyond the expertise of a layperson. *Seybold v. Neu*, 105 Wn. App. 666, 676, 19 P.3d 1068, 1074 (2001) (citing *Harris v. Robert C. Groth, M.D., Inc.*, 99 Wn.2d 438, 663 P.2d 113 (1983)). Accordingly, expert testimony is required to establish the standard of care and most aspects of causation in a medical negligence action. *Young v. Key Pharms., Inc.*, 112 Wn. 2d 216, 228, 770 P.2d 182, 189 (1989).

An expert-physician may provide opinion on other medical specialties so long as that expert can offer "sufficient expertise to demonstrate familiarity with

the procedure or medical problem at issue." *Morton v. McFall*, 128 Wn. App. 245, 253, 115 P.3d 1023, 1027 (2005).

Plaintiff's lone expert witness lacks that familiarity. Dr. Marmureanu is a cardiothoracic surgeon. He is not in the same specialties as Dr. Ball, a board-certified cardiologist, and Dr. Chaganur, a board-certified internal medicine specialist and Providence hospitalist. He cannot testify to the standard of care for cardiologists or hospitalist physicians. He did not demonstrate familiarity with their specialties.

Dr. Marmureanu's testimony demonstrates this inadequacy. He testified that he worked with internal medicine hospitalists and cardiologists. And he said he understood the roles that separate specialties performed. But he made no claim to have performed those roles. His testimony implicitly affirmed that cardiology and internal medicine are distinct from his personal training and experience.

Plaintiff's expert also failed to establish Washington's standard of care. A plaintiff must present evidence of a statewide standard of care. *Adams v. Richland Clinic, Inc.*, 37 Wn. App. 650, 655, 681 P.2d 1305, 1308 (1984). This requires competent evidence by experts who practice in the same field and have knowledge of the state standard. *McKee v. Am. Home Prods. Corp.*, 113 Wn.2d 701, 706, 782 P.2d 1045, 1048 (1989).

Dr. Marmureanu offered insufficient testimony to establish his knowledge about Washington's standards. A non-resident physician must "provide underlying facts identifying a background that substantiates" such knowledge. *Boyer v. Morimoto*, 10 Wn. App. 2d 506, 524, 449 P.3d 285, 294 (2019). This must be "based on his training, education, and experience." *Chervilova v. Overlake Obstetricians & Gynecologists, PC*, 30 Wn. App. 2d 120, 127, 543 P.3d 904, 907 (2024).

Dr. Marmureanu lacks the training, education, and experience to testify about cardiologists or hospitalists. Those are not his specialization. He is not qualified to talk about the standard of care for those specialties, whether in Washington *or across the country*.

Nor can Dr. Marmureanu testify to Washington's standard of care. Dr. Marmureanu had no personal knowledge about Washington's standard of care. On summary judgment, Dr. Marmureanu claimed his 'knowledge' that Washington follows the national standard of care is based on the testimony of Providence's 30(b)(6) designee. **That witness was not called at trial.** Dr. Marmureanu lacks the foundation to establish Washington's standard of care. He has no factual knowledge supporting his assertion.

More, he is licensed in California and New York. He testified that Washington followed the same standard of care, but he lacks the knowledge of

those specialties. He does practice in those specialties. His testimony repeatedly affirmed that internal medicine and cardiology work were separate roles performed by separate specialists in his team. And he admitted that he refers patients out when they need cariology care. He lacks the "background that substantiates" his testimony about Washington's standard of care. *See Boyer*, 10 Wn. App. 2d at 506, 524, 449 P.3d at 294. His testimony did not establish the standard of care.

In fact, Dr. Marmureanu lacks the foundation to testify about the national standard for hospitalists and cardiologists. He identified no board certifications in any of these specialties. He is not qualified to offer testimony about the standards of care for the specialties at issue in this case.

Dr. Marmureanu never offered any underlying facts supporting his claimed knowledge. He identified no comparable care that he personally performed. He talked about the general role of specialties and general circumstances he encountered in practice. He never identified his personal education, training, or experience that qualified him to testify about Washington's standard of care or what Dr. Chaganur and Dr. Ball should have done.

As he offered no evidence of the standard of care, Plaintiff similarly failed to offer any evidence of breach. He offered no evidence of any standard that Defendants failed to satisfy.

Even if Plaintiff could satisfy his burden on standard of care and breach, his case still must be dismissed as a matter of law on causation. Medical expert testimony must show that the act complained of more likely than not caused the injury. *O'Donoghue v. Riggs*, 73 Wn.2d 814, 824, 440 P.2d 823, 830 (1968). This opinion "must speak in terms of probability and not mere possibility." *Colley v. PeaceHealth*, 177 Wn. App. 717, 728, 312 P.3d 989, 995 (2013). An expert must tie their medical causation opinions to the facts presented. *Reyes*, 191 Wn.2d at 86–87, 419 P.3d at 823; *Seybold v. Neu*, 105 Wn. App. 666, 676, 19 P.3d 1068, 1074 (2001).

Dr. Marmureanu identifies no causal link between any alleged breach and Ms. Tackett's death nine months later. He admits that he did not remember whether Ms. Tackett received care in Montana after going to Providence. And he had no memory of what treatment she received in the nine months before her death.

Dr. Marmureanu also asserts that a device would have significantly reduced Ms. Tackett's risk. But a reduction in risk is not equivalent to that risk being the cause of her death. His opinion was merely that Defendants *could* have reduced risk. His testimony never established that Ms. Tackett's would more likely have been avoided if Defendants took those actions.

And Dr. Marmureanu testified that Dr. Highfill provided a 2018 plan and failed to follow through on it. He then acknowledged he did not know why the

plan was not followed. Nor did he review Dr. Highfill's records. And he alleged that Ms. Tackett's Montana providers fell below the standards of care. He even referred to a Montana provider as "reckless." His testimony failed to identify Defendants as the proximate cause of Ms. Tackett's death and it failed to address the other potential proximate causes.

Dr. Marmureanu's prior testimony even shows other likely causes. In deposition, Dr. Marmureanu stated that Ms. Tackett needed a referral to an electrophysiologist in November 2018, "after she had the stroke" and that there "is no standard of care" regarding when to have a follow up discussion to cardiac device implantation. And he has observed that her primary cardiologist essentially "abandoned the patient." His own testimony undermines Defendants being the cause of Ms. Tackett's death.

Nor did any other witness establish causation. Dr. Ralston is a fact witness, not an expert witness. He would not be qualified to testify about causation even if he were designated as an expert because he does not practice in the same specialties as Dr. Ball and Dr. Chaganur. And even if he could, he testified only to what caused her death nine months after she visited Dr. Chaganur. None of it showed that the doctors' specific acts "more likely than not caused" Ms. Tackett's death.

No evidence was presented that would ever allow a jury to reach any causation finding. Even if Plaintiff's medical-negligence claims could survive his deficient evidence on standard-of-care and breach, then that claim must be dismissed as a matter of law because Plaintiff presented no causation evidence.

**C. The vicarious liability theory against Providence fails with the underlying medical-negligence claim against Dr. Chaganur.**

Vicarious liability is derivative. Plaintiff alleges that Providence is vicariously liable for Dr. Chaganur's liability. But Plaintiff proved no standard of care governing Dr. Chaganur's practice that she violated nor any way a violation caused Ms. Tackett's death. No liability thus exists to impute to Providence.

**D. Plaintiff's corporate-negligence claim should be dismissed for lack of expert testimony.**

Judgment as a matter of law should also be granted on Plaintiff's claim for corporate negligence. The essential elements of negligence are: (1) the existence of a duty owed to the complaining party; (2) breach; (3) resulting injury; and (4) proximate cause between the claimed breach and resulting injury. *Ripley v. Lanzer*, 152 Wn. App. 296, 324, 215 P.3d 1020, 1034 (2009). A hospital owes the following duties under this doctrine: (1) to use reasonable care in the maintenance of buildings and grounds for the protection of the hospital's invitees; (2) to furnish the patient supplies and equipment free of defects; (3) to select its employees with

reasonable care; and (4) to supervise all persons who practice medicine within its wall. *Douglas v. Freeman*, 117 Wn.2d 242, 248, 814 P.2d 1160, 1164 (1991).

Plaintiff offered no evidence that Providence violated any duty owed to Ms. Tackett. A hospital must exercise the skill, care, and learning expected of a reasonably prudent Washington hospital in the same circumstances. *Douglas*, 117 Wn.2d at 248, 814 P.2d at 1163–64; *Ripley*, 152 Wn. App. at 324, 215 P.3d at 1035. Proving breach and causation takes competent expert testimony. *Putman v. Wenatchee Valley Med. Ctr., P.S.*, 166 Wn.2d 974, 988–89, 216 P.3d 374 (2009) (concurrence); *Ripley*, 152 Wn. App. at 324–25, 215 P.3d at 1034 (affirming dismissal where plaintiff offered no evidence of breach and causation).

Plaintiff offered no expert testimony supporting his corporate-negligence claim. He called no hospital-administration expert. And Dr. Marmureanu made generic assertions that Providence controlled licensing and conducted various internal reviews. He offered nothing to substantiate his knowledge of that purported standard, nor did he explain how he was qualified to opine on hospital supervision. Plaintiff did not establish any relevant standard of care here.

Nor did he establish any resulting breach. But Dr. Marmureanu acknowledged that Providence had all relevant credentialing committees, morbidity review, bylaws, and policies to the best of his knowledge. He tried to salvage this admission by saying that either some policy was not in place or it was

not followed, but he admitted he had no idea which one. That is not evidence. Dr. Marmureanu offered no evidence that Providence breached any requirement of the corporate-negligence doctrine.

Plaintiff cannot satisfy the first or second element of his corporate negligence claims. His claim fails under *Ripley* and *Putman* as a matter of law.

Plaintiff also fails to meet the breach requirement. He identified no standard of care for Dr. Chaganur or the other physicians. As such, he cannot show that Providence breached any such standard of care.

Nor can Plaintiff satisfy the causation requirement. No witness testified to any missing policy, a supervisory lapse, or a credentialing decision. And due to that lack of evidence, no testimony was offered than any such lapse caused Ms. Tackett's death.

Plaintiff's claim fails as a matter of law. He cannot identify any corporate standard that Providence should have met. And because he offered no missing standard, he cannot establish that any missed standard caused Ms. Tackett's death. No jury could find in his favor.

**E. Even if Plaintiff pleaded a survival claim, which he didn't, that claim should still be dismissed as a matter of law.**

Plaintiff pleaded no survival claim, so he preserved no claim that could have been brought by his late wife. RCW 4.20.046, .060.

But even if the Court allowed Plaintiff to pursue that claim at trial, the claim still should be dismissed for two independent reasons.

First, Plaintiff presented no expert testimony to establish the standard of care, breach of the standard of care, or proximate causation for medical and corporate negligence. Lacking evidence to establish essential elements of those claims, they should be dismissed.

Second, Plaintiff presented no evidence about Ms. Tackett's alleged noneconomic or economic damages. RCW 4.20.060. Absent such evidence, the jury has no legally sufficient evidentiary basis to find those damages.

**F. Plaintiff's wrongful-death claim should be dismissed for failure to prove medical and corporate negligence.**

For the same reasons, Plaintiff's wrongful-death claim should be dismissed. A wrongful-death claim requires the plaintiff to establish the "wrongful act, neglect, or default of another person." RCW 4.20.010. Plaintiff's wrongful-death claim here is based on Defendants' alleged medical and corporate negligence. But, as explained, those claims should be dismissed for lack of proof.

Plaintiff presented no expert testimony to establish the standard of care, breach of the standard of care, or proximate causation for medical negligence and corporate negligence. Lacking evidence to establish essential elements of those claims, Plaintiff's wrongful-death claim under chapter 4.20 RCW should be dismissed.

**G. Many of Plaintiff's alleged damages theories lack sufficient evidence or are not recognized by Washington law.**

Even if this action is not dismissed, many of Plaintiff's claimed damages lack a sufficient evidentiary basis or are not recognized under Washington law.

First, no legally sufficient evidentiary basis exists to allow a jury to find that Plaintiff is entitled to lost-business damages from his wife's death. The wrongful-death statutes do not permit a statutory beneficiary to recover the loss of their business. *See* RCW 4.20.010; RCW 4.20.020; *Kellogg v. Nat'l R.R. Passenger Corp.*, 199 Wn.2d 205, 217, 504 P.3d 796, 804 (2022). The recoverable economic damages in wrongful death include only the "loss of the decedent's income that would have supported the beneficiaries." *Hatch v. Tacoma Police Dep't*, 107 Wn. App. 586, 588–89, 27 P.3d 1223, 1224 (2001). Plaintiff's claimed lost profits are not recognized as an element of wrongful-death damages under Washington law.

Nor may Plaintiff recover any consortium damages for his children. His children are not parties to the action and have asserted no claims. Nor did his children offer any testimony regarding their damages.

This Court already recognized that "Plaintiff's minor children are not parties to this action as they are not named as parties in Plaintiff's Second Amended Complaint nor does Plaintiff make any claims on their behalf therein." ECF No. 241 at 2. Plaintiff cannot recover any damages for his minor children.

Plaintiff failed to provide any evidence supporting his limited damages claim. Plaintiff alleges post-death loss of consortium, including the "loss of his marriage with Robbie, and the loss of her comfort, aid, and support." ECF No. 148 at 8.

But he offered no evidence supporting these damages. A plaintiff should present evidence for economic damages such as the decedent's income, earning history, likely future earnings, and the financial contributions actually made to beneficiaries.

Plaintiff has pled narrow legal bases for any damages. And he has offered scant evidence of damages. His damages must be limited in accordance with those legal and evidentiary limitations.

**H. Even if this Court denies all claims as to Providence, it should still dismiss defendant Dr. Chaganur because Plaintiff presented no evidence supporting his claims against her.**

If the Court does not dismiss the claims against Defendants outright, it should dismiss the claims against Dr. Chaganur. Plaintiff's case concerns the hospital operating procedures and cardiology care. He offered no evidence implicating Dr. Chaganur.

RCW 7.70.040 analyzes each provider against "the profession or class to which he or she belongs." A plaintiff must establish that standard for each specific

defendant, a breach of that standard, and causation linking that breach to the injury. Reyes, 191 Wn.2d at 86, 419 P.3d at 822–23.

*First*, Plaintiff offered no credible evidence about Dr. Chaganur's standard of care. His one expert witness would need to establish "sufficient expertise to demonstrate familiarity with the procedure or medical problem at issue." *Morton*, 128 Wn. App. at 253, 115 P.3d at 1027.

Plaintiff's lone expert witness lacks that familiarity. Dr. Marmureanu is not an internal medicine specialist nor hospitalist. He is not experienced with the coordination between a hospitalist and a cardiology team. In particular, he has no relevant experience regarding what standard of care a hospitalist owes a stroke patient when that patient is already being reviewed by a consulting cardiology service.

Any opinion about Dr. Chaganur's standard of care must focus on her specific responsibilities. But Plaintiff's expert is not qualified to testify to her specialty. He lacks experience to discuss the standard of care for internal medicine and hospitalists. Plaintiff cannot satisfy the first element of his medical negligence claim.

*Second*, Plaintiff identifies no breach by Dr. Chaganur. Dr. Ralston attributed Ms. Tackett's death to cardiomegaly, or an enlarged heart. That relates to the cardiology care. Likewise, Dr. Marmureanu testified that Dr. Chaganur had

an independent duty to recognize life-threatening cardiac risk, escalate those risks to cardiology, and communicate with the patient. And he asserted that Dr. Chaganur should never have discharged Ms. Tackett. But he never alleged that she failed to perform *her* role.

It is undisputed that Dr. Chaganur coordinated her care of Ms. Tackett with neurology and cardiology. In particular, Dr. Chaganur followed the recommendations from neurology and cardiology teams regarding Ms. Tackett's treatment and her discharge was a coordinated decision that did not occur until all teams cleared it. Plaintiff's own theory alleges breaches by cardiology, not Dr. Chaganur.

Dr. Marmureanu's own testimony discussed how hospitalists and internal-medicine specialists are part of a care team. He never identified any specific responsibility held by Dr. Chaganur in her team that she failed to perform. He affirmed that she correctly diagnosed Ms. Tackett's risks. And earlier in this case, he admitted that the decision for referring a patient to electrophysiology falls within the provider's scope of practice and physician judgment. Those decisions were not made by Dr. Chaganur. She did not make the determination about whether Ms. Tackett was a device candidate. Dr. Chaganur made none of the relevant decisions. And Dr. Marmureanu's testimony even acknowledged that Dr.

Chaganur correctly diagnosed the risks. He identified no error attributable to Dr. Chaganur.

Dr. Marmureanu offered nothing more than a conclusory statement that Dr. Chaganur breached her standard her care at the close of the

*Third*, Dr. Chaganur's decisions were not the cause of Ms. Tackett's death. Causation must be proved as to this defendant. *McLaughlin v. Cooke*, 112 Wn.2d 829, 837, 774 P.2d 1171, 1175 (1989). Plaintiff had to show that but for something Dr. Chaganur did or failed to do, Ms. Tackett would have lived.

Plaintiff's case relies on decisions that were not made by Dr. Chaganur. She did not decide whether to order an electrophysiology consult. She could not have requested that cardiology change its determination. Nor is there any evidence that a different discharge determination would have resulted in a device implantation. Plaintiff identifies no decision made by Dr. Chaganur that caused Ms. Tackett's death.

## V. CONCLUSION

Plaintiff presented all his evidence. His one expert witness offered no standard of care evidence nor any causation evidence implicating Defendants. No reasonable jury could find in favor of Plaintiff's claims. The Court should grant judgment as a matter of law under Rule 50(a) and dismiss this action.

And even if the Court does not grant this motion for all Defendants, it should dismiss all claims against Dr. Chaganur. No testimony alleges any breach of Dr. Chaganur's standard of care.

DATED: September 1, 2026.

EVANS, CRAVEN & LACKIE, P.S.

By: __*/s/ Markus W. Louvier*
MARKUS W. LOUVIER, WSBA #39319
STEPHANIE A. CROCKETT, WSBA #62797

*Attorneys for Defendants*

Evans, Craven & Lackie, P.S.
818 West Riverside, Suite 250
Spokane, Washington 99201
(509) 455-5200/(509) 455-3632 Facsimile
mlouvier@ecl-law.com
scrockett@ecl-law.com

**CERTIFICATE OF SERVICE**

I hereby certify that on September 1, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

Justin D. Leigh, WSBA #55307
Law Office of Justin D. Leigh
601 W. 1st Ave, Ste. 1400, PMB #17389612
Spokane, WA 99201
justindleigh@gmail.com

__/s/ Stephanie A. Crockett_______________

MARKUS W. LOUVIER, WSBA #39319
STEPHANIE A. CROCKETT, WSBA #62797
Attorneys for Defendants
818 West Riverside, Suite 250
Spokane, Washington 99201
(509) 455-5200/(509) 455-3632 Facsimile
mlouvier@ecl-law.com
scrockett@ecl-law.com